**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANGELA BODEN SCOTTI, | : | |
| | : | Civil Action No. 19-13981 (ES) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| RUTGERS UNIV. HEALTHCARE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

Plaintiff Angela Boden Scotti, ("Plaintiff"), a prisoner confined at the Millicent Fenwick Halfway House in Paterson, New Jersey at the time of filing, has submitted a Complaint alleging violations of her civil rights by various prison officials. (D.E. No. 1, Complaint ("Compl.")).[1] At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court will proceed the Complaint in part.

**I.      Background**

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Rutgers University Healthcare, the New Jersey Department of Corrections, John/Jane Doe Doctor,

---

[1]      The Court notes that recently, Plaintiff submitted an "Amended Complaint." (D.E. No. 7). Based on the language used by Plaintiff, it appears she intended to incorporate by reference her original Complaint. Accordingly, this Opinion will refer to the original Complaint and analyzes the claims asserted therein. The Court also addresses the new claims asserted by the Amended Complaint below.

Dr. Maeyo, Sarah Davis, Frances Rodriguez, and Soyrita from Administration. The following factual allegations are taken from the Complaint and are accepted for purposes of this screening only. The Court has made no findings as to the veracity of Plaintiff's allegations.

On January 26, 2018, Plaintiff entered the hospital at Edna Mahon Correctional Facility for Women ("EMCFW") to be seen by a doctor. (Compl. at 12). She informed the unidentified doctor that her pacemaker battery needs to be checked every three months. (*Id.*). The doctor informed her that he or she would schedule an appointment to do so, but Plaintiff "never got any appointment" and "never got [the] battery checked." (*Id.*).

Plaintiff further alleges that throughout her time in prison and every time she has been back for a visit, she has informed the corrections officers that she cannot go through the metal detectors because of her pacemaker. (*Id.*). Yet, the officers insist that she go through the metal detectors. (*Id.*). Specifically, on January 15, 2019, Sergeant Williams attempted to require Plaintiff to pass through the metal detector. (*Id.* at 13). It is unclear whether Plaintiff did so. (*Id.*).

On May 20, 2019, Plaintiff was seen by Doctor Maeyo at Northern State Prison, who agreed that her pacemaker needs to be serviced, but again, no appointment was ever set up. (*Id.*). On May 24, 2019, Plaintiff spoke to Northern State Prison Administrator Frances Rodriguez, who "got permission for Medtronic to come to NSP and check [her] battery." (*Id.* at 14). An appointment was scheduled for May 30, 2019, but it was cancelled. (*Id.*). Plaintiff spoke to Soyrita from Administration, who rescheduled the appointment for May 31, 2019. (*Id.*). However, no one showed up to the re-scheduled appointment. (*Id.*). After speaking with her outside cardiologist, Plaintiff was informed that "the prison is declining Medtronic to check pacemaker." (*Id.*). Instead, the prison required Plaintiff to receive treatment from the doctors at St. Francis Medical Center, which she declined. (*Id.* at 16). Plaintiff states that Medtronic has

2

offered to provide all institutions with "the magnet to obtain a pacemaker box to check [her] pacemaker," but nothing has been done. (*Id.* at 17).

Plaintiff is seeking "to be compinsated [sic] for [her] stress[,] emotional, mentally and physically[;] the aggravation [she] and [her] family are being put through with phone calls, letters, grievances etc and still not being able to have the equipped people check [her] battery Medtronic." (*Id.* at 5).

## II. Discussion

### A. Legal Standard

#### 1. Standards for a *Sua Sponte* Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915A because Plaintiff is a prisoner.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159,

3

162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).  To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Notably, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim."  *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

### 2. Section 1983 Actions

42 U.S.C. § 1983 creates a personal right of action for certain violations of an individual's constitutional rights.  To state a claim for relief under § 1983, a plaintiff must allege (i) the violation of a right secured by the Constitution or laws of the United States; and (ii) that the alleged deprivation was committed or caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## B. Analysis

### 1. Rutgers University Healthcare

Though she does not explicitly state as much, it appears Plaintiff has named Rutgers University Healthcare as a defendant because it is the entity contracted to provide medical services to prisoners and its employees allegedly denied Plaintiff proper medical care.  Assuming for

4

purposes of the instant review that Rutgers University Healthcare is a state actor, the Complaint fails to allege a proper § 1983 claim.

In order to state a claim under § 1983 against a state entity for the actions or inactions of its employees, plaintiff must allege that there was a relevant policy or custom, and that the policy caused the constitutional violation they allege. *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). That is, Rutgers University Healthcare "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *See id.* Here, the Complaint is entirely devoid of any allegations about a policy or custom maintained by Rutgers University Healthcare which caused Plaintiff's alleged constitutional harm. Accordingly, any claim against Rutgers University Healthcare is dismissed *without prejudice*.

### 2. New Jersey Department of Corrections

Plaintiff also names the New Jersey Department of Corrections as a defendant. However, the New Jersey Department of Corrections is not a person amendable to suit under § 1983. *See Foye v. Wexford Health Sources Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, all claims against the New Jersey Department of Corrections are dismissed *with prejudice*.

### 3. Remaining Defendants

Plaintiff only names Rutgers University Healthcare and the New Jersey Department of Corrections as defendants. However, broadly construing her *pro se* Complaint, the Court finds that it also contains allegations of an Eighth Amendment denial of medical care claim against a John/Jane Doe Doctor; Dr. Maeyo; Sarah Davis; Frances Rodriguez; and Soyrita from Administration.

The Eighth Amendment prohibits the states from inflicting "cruel and unusual

punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (i) a serious medical need; and (ii) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to her serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care or disagreement with the professional judgment of trained medical staff, in and of itself, is insufficient to establish deliberate indifference. *Williams v. Ann Klein Forensic Ctr.*, No. 18-9606, 2020 WL 614657, at *8 (D.N.J. Feb. 10, 2020); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a

doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

> Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met . . . . Finally, deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.

*Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (citations omitted). "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." *Id.*

With regards to Defendant John/Jane Doe, a doctor at EMCFW, Plaintiff had an appointment with him/her on January 26, 2018, where Plaintiff informed him/her that Plaintiff's pacemaker needed to be checked every three months. (Compl. at 12). The doctor informed Plaintiff that he/she would set up an appointment to check the pacemaker, but the appointment never occurred. (*Id.*). As acknowledged by Plaintiff, the allegations against this defendant appear to only amount to negligence, at best. There are no indications that John/Jane Doe Doctor acted with "a state of mind equivalent to reckless disregard of a known risk of harm." *Farmer*, 511 U.S. at 837–38. As such, the claim against Doctor John/Jane Doe will be dismissed *without prejudice*.

With respect to Officer Williams, the Complaint alleges that Officer Williams told Plaintiff that she did not care about Plaintiff's pacemaker and that Plaintiff would still be required to go through the metal detector when Plaintiff came back to the prison for appointments. (Compl. at

13). However, there is no allegation that Plaintiff actually went through the metal detector or that her peacemaker was actually otherwise jeopardized. Rather, Plaintiff only states that she "[came] back to program on 1-16-19 [and she] call[ed] osbudsman [sic] and report[ed] it." (Id.). In short, there are insufficient facts alleged about the interaction with Officer Williams, and the Court is unable to conclude whether Officer Williams was deliberately indifferent to Plaintiff's medical need by stating that Plaintiff would have to go through the metal detector. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346. Accordingly, the claim against Officer Williams is dismissed *without prejudice*.

With regards to Dr. Maeyo, Plaintiff states that on May 20, 2019, she went to see him at Northern State Prison. (Compl. at 13). Dr. Maeyo agreed that the pacemaker needed to be "integrated," and he scheduled an appointment to do so, but nothing was done. (*Id.*). Plaintiff further states that Dr. Maeyo noted it should be "on site if permissible." (*Id.*). None of these allegations suggest deliberate indifference. As with Dr. John/Jane Doe, at best these allegations suggest negligence for failing to follow up with the appointment. In fact, by Plaintiff's own admission Dr. Maeyo attempted to schedule an appointment for the "integration" and even wanted it to be done "on site," but for unstated reasons, the appointment did not occur. These allegations do not suggest "a state of mind equivalent to reckless disregard of a known risk of harm." *Farmer*, 511 U.S. at 837–38. The claim against Dr. Maeyo will therefore be dismissed *without prejudice*.

With regards to Sarah Davis, the Administrator at EMCFW, she sent an email which stated that Plaintiff is required to go through Northern State Prison for her pacemaker treatment. (Compl. 14). In response to that email, Plaintiff spoke to Frances Rodriguez, a Northern State Prison Administrator, who "got permission for Medtronic to come to NSP and check [her] battery," but the subsequent appointment set for May 30, 2019 was cancelled. (*Id.*). Plaintiff spoke to

Soyrita in Northern State Prison Administration, who rescheduled the appointment for May 31, 2019, but "no one showed up." (*Id.*). After that incident, Plaintiff called her outside cardiologist who informed her that the "prison" is refusing to allow Medtronic to check her pacemaker. (*Id.*).

While it is not the picture of clarity, the Court assumes the allegations that the "prison" is refusing to allow Medtronic to check her pacemaker refer to Northern State Prison Administration Defendants Frances Rodriguez and Soyrita.[2] At this early juncture, where Plaintiff has alleged that her outside cardiologist recommended servicing by Medtronic, and Medtronic is willing to come to the prison, but the prison is refusing to allow them to do so, the Court will permit her claim for denial of medical treatment to proceed against Defendants Frances Rodriguez and Soyrita from Administration. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 ("[D]eliberate indifference is demonstrated when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.") (citations omitted).

Finally, as to the "Amended Complaint," it generally refers to an injury from a chemical burn on July 15, 2019, which "got medically neglected" and led to an infection. (*See generally* D.E. No. 7). However, Plaintiff does not provide sufficient further factual allegations in either the original Complaint or the Amendment to support deliberate indifference claims. (*See id*. at 5–7). As such, the Court summarily dismisses the claims asserted in the Amended Complaint *without prejudice*.

### III. Conclusion

For the foregoing reasons, the denial of medical care claim against Defendants Rodriguez

---

[2] Any intended claim against Sarah Davis is dismissed *without prejudice*. It does not appear that she was personally involved in denying medical care to Plaintiff. *See Rode v. Dellacriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (claim for deprivation of constitutionally protected right must be based on personal involvement of defendant in alleged misconduct). Rather, she merely informed Plaintiff that Northern State Prison would coordinate her care.

and Soyrita will be permitted to proceed. The claims against the New Jersey Department of Corrections will be dismissed *with prejudice*, and all other claims will be dismissed *without prejudice* pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. Should Plaintiff seek to amend any of the dismissed claims, she must do so in compliance with all local and federal rules. An appropriate Order follows.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**