## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA BODEN SCOTTI, | Civil Action No.  19-13981 (JXN) (CLW) |
| Plaintiff, | |
| v. | **OPINION** |
| UNIVERSITY CORRECTIONAL HEALTH CARE, *et. al.*, | |
| Defendants. | |

**NEALS**, District Judge

This matter comes before the Court on the motions to dismiss filed by Defendants Rutgers University Correctional Health Care ("UCHC"), (ECF No. 77) and Sarah Davis ("Davis"), (ECF No. 78) (collectively "Defendants"). Plaintiff filed Opposition to Defendants' motions (ECF Nos. 90, 91) and Defendants filed reply briefs (ECF Nos. 92, 93). UCHC seeks dismissal of Plaintiff's (Count Six) New Jersey Tort Claims Act ("NJTCA") claim for medical malpractice against them pursuant to Fed. R. Civ. P. 12(b)(6). Davis seeks dismissal of Plaintiff's (Counts One and Three) Eighth Amendment Cruel and Unusual Punishment claims against her pursuant to Fed. R. Civ. P. 12(b)(6). Having reviewed the parties' submissions and having declined to hold oral argument pursuant to Fed. R. Civ. P.  78(b) and L. Civ. R. 78.1(b), for the reasons stated herein, UCHC's motion (ECF No. 77) is **GRANTED,** and Davis's motion (ECF No. 78) is **DENIED**.

## I.   BACKGROUND AND PROCEDURAL HISTORY[1]

On June 18, 2019, Plaintiff Angela Boden Scotti ("Plaintiff" or "Scotti"), a prisoner confined at the Millicent Fenwick Halfway House in Paterson, New Jersey ("Fenwick House") at the time, filed a Complaint alleging violation of her civil rights by various prison officials. (ECF No. 1.) Plaintiff's Complaint raised claims against Defendants UCHC, Davis, the New Jersey Department of Corrections, John/Jane Doe Doctor, Dr. Francis Meo ("Dr. Meo"), Frances Rodrigues ("Rodrigues"), and Soraya Arce ("Arce")[2] from Administration. (*See id.*) On October 31, 2019, Plaintiff filed an Amended Complaint adding Defendants Office of Community Programs and Fenwick House. (*See* ECF No. 7.)

On February 27, 2020, the Honorable Esther Salas, U.S.D.J. ("Judge Salas")[3], filed an Opinion and Order pursuant to the Court's screening authority under 28 U.S.C. § 1915A, proceeding Plaintiff's claims against Defendants Rodriguez and Arce, dismissing with prejudice the claims against the New Jersey Department of Corrections, and dismissing without prejudice the remaining claims. (*See generally* ECF Nos. 9, 10.) Judge Salas provided Plaintiff leave to file an amended complaint. (*See id.*)

On March 15, 2021, Plaintiff filed an Amended Complaint reasserting claims against Defendants UCHC, Office of Community Programs, Fenwick House, Rodriguez, and Arce. (ECF No. 41.) On August 6, 2021, Plaintiff filed a motion to amend. (ECF No. 56.) On September 23,

---

[1] For the purposes of this motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in the facts alleged in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] Soraya Arce is referred to as "Soyrita" in the original Complaint.

[3] On July 27, 2020, this matter was reassigned to the Honorable Kevin McNulty, U.S.D.J. (ECF No. 17.) On June 28, 2021, the matter was reassigned to the undersigned for all further proceedings (ECF No. 52.)

2021, the Court denied Plaintiff's motion to amend without prejudice and *sua sponte* appointed Plaintiff *pro bono* counsel. (ECF No. 60.) The Court provided Plaintiff with leave to file a counseled amended complaint. (*See id.*)

On December 31, 2021, Plaintiff filed a counseled Second Amended Complaint. (ECF No. 70.) The Second Amended Complaint raises claims against Defendants UCHC, Fenwick House, New Jersey Association on Correction, Marcus Hicks ("Hicks"), Davis, Lola Patterson ("Patterson"), Helena Lewis ("Lewis"), Arce, and Jane Doe Medical Care Provider. (*See generally id.*)

### A. Pacemaker

The Second Amended Complaint submits that in January 2012, Plaintiff received a Medtronic pacemaker from Jersey Shore Medical Center. (*Id.* ¶ 17.) Plaintiff was instructed to have the pacemaker evaluated approximately every three months to ensure that the battery was working properly. (*Id.* ¶ 18.) Plaintiff was incarcerated in a county correctional facility from October 20, 2017, until late January 2018. (*Id.* ¶ 20.) Shortly after her arrival at the county correctional facility, a representative from Medtronic came to evaluate Plaintiff's pacemaker. (*Id.* ¶ 21.)

In late January 2018, Plaintiff was transferred to Edna Mahan Correctional Facility ("EMCF"). (*Id.* ¶ 22.) At her initial medical screening appointment at EMCF, Plaintiff informed Defendants Jane Doe Doctor and Davis, the Warden of ECMF, that her pacemaker needed to be evaluated every three months, and it was last evaluated in October 2017. (*Id.* ¶ 24.) Three months later, in April 2018, Plaintiff was sent to Bo Robinson Assessment Center for a pacemaker evaluation. (*Id.* ¶ 25.)

Plaintiff was transferred to Fenwick House, a residential community release program, in or around July 2018 and remained there until March 2020. (*Id.* ¶ 26.) Plaintiff informed Defendant

Patterson, the Director of Fenwick House, that her pacemaker needed to be evaluated every three months. (*Id.* ¶ 27.) In July 2018, Plaintiff was sent to Northern State Prison ("NSP") for a medical screening and Dr. Meo informed Plaintiff that he would send Fenwick House an order to evaluate Plaintiff's pacemaker every three months. (*Id.* ¶¶ 28-30.) Plaintiff's pacemaker was not evaluated three months after her April 2018 checkup and when Plaintiff complained on numerous occasions to Defendants Patterson and Lewis, Director of Treatment at Fenwick House, she was told to file a grievance as they did not have the authority to cause her pacemaker to be evaluated. (*Id.* ¶¶ 31-32.) Plaintiff also sent numerous grievances to Hicks, but nothing was done. (*Id.* ¶ 33.)

On or around May 23, 2019, a year after Plaintiff's pacemaker had last been evaluated, Plaintiff met with Davis and asked if she could have her pacemaker evaluated by a doctor when she goes home on weekends. (*Id.* ¶¶ 34-36.) Davis denied Scotti's request, informing her that Dr. Meo must order that her pacemaker be evaluated. (*Id.* ¶¶ 37-38.)

On or around May 24, 2019, Scotti called NSP and spoke with Defendants Rodriguez and Arce in the administration to make an appointment for Medtronic to evaluate her pacemaker. (*Id.* ¶ 38.) Defendants Rodriguez and Arce initially made an appoint for Plaintiff but then cancelled the appointment, informing Plaintiff that Medtronic was not permitted to come to NSP. (*Id.* ¶ 39.)

Plaintiff called her personal cardiologist, Dr. Girgis, who informed Plaintiff that her pacemaker needed to be evaluated immediately. (*Id.* ¶ 40.) Due to the urgency of the situation, Plaintiff visited Dr. Girgis on her furlough weekend and had her pacemaker evaluated. (*Id.*) Subsequently, Plaintiff's mother and sister called the parole board, expressing their concern that Plaintiff needed her pacemaker evaluated on a regular basis. (*Id.* ¶ 42.) The parole board contacted the New Jersey Department of Corrections, and an appointment was set up at St. Francis Hospital for December 2019. (*Id.* ¶ 43.) Plaintiff was released from Fenwick House in March 2020 and has her pacemaker evaluated every month since. (*Id.* ¶ 45.)

4

### B.  Metal Detectors

Plaintiff submits that at the time of her arrival at EMCF in January 2018, she informed the prison guards that she could not go through metal detectors because "they could cause her pacemaker to malfunction and put her in imminent risk of a cardiac event." (*Id.* ¶ 47.) The prison guards informed Plaintiff that she was required to go through the metal detectors because of a Department of Corrections policy. (*Id.* ¶ 48.) Plaintiff and her sister complained to Davis, but she was still required to go through the metal detectors any time she went to ECMF. Plaintiff estimates that she was forced to go through the metal detectors three to four times a day for six weeks while she moved around EMCF and an additional eight to ten times for doctors, hospital, dentist and court visits while she was at the Fenwick House. (*Id.* ¶ 51.) Plaintiff complained to Defendants Hicks, Davis, and Patterson. (*Id.* ¶ 53.)

During Plaintiff's May 23, 2019, meeting with Davis, Plaintiff again complained about the metal detectors. (*Id.* ¶ 54.) Davis stated that Plaintiff was exempt from going through the detectors and Davis would address the staff about the issue. (*Id.*) Despite Plaintiff showing the prison guards a note from Davis saying the Plaintiff was exempt from going through the detectors, Plaintiff was still required to go through them on three more occasions. (*Id.* ¶ 55.) Following a complaint from Plaintiff to the Ombudsman, Plaintiff was no longer required to go through the metal detectors. (*Id.* ¶ 56.)

### C.  Chemical Burn

During her stay at Fenwick House, Plaintiff worked at Rainbow Food Group from October 2018 to February 2020. (*Id.* ¶ 58.) On July 15, 2019, Plaintiff injured herself when she sat on a heated degreaser. (*Id.* ¶ 60.) Plaintiff requested an appointment with a doctor and was seen the following day by Defendant Jane Doe Medical Care Provider at NSP ("Jane Doe Medical Care Provider"). (*Id.* ¶¶ 61-63.) Jane Doe Medical Care Provider "thought [Plaintiff] was lying and that

her wound did not look like a chemical burn and directed [Plaintiff] to apply ointment, plastic pads and clean the wound, despite [Plaintiff] explaining the genesis of her injuries and the clearly visible burns on her body." (*Id.* ¶ 65.) Plaintiff complained to Patterson and Lewis that her buttocks area was burning and requested to be sent to an outside facility, but she was told that it was against its policy to do so. (*Id.* ¶¶ 66.)

Over a week later, officials at Fenwick House made her another appointment at NSP, where she saw Dr. Meo. (*Id.* ¶ 67.) When Plaintiff explained that she had previously met with Jane Doe Medical Care Provider who claimed to be a doctor, Dr. Meo said that he was the only doctor at NSP. (*Id.* ¶ 68.) Dr. Meo called an ambulance and sent Plaintiff to Max Hospital, where she spent approximately 13 days in the infirmary, and Dr. Braimbridge cleaned her wound and applied silverdine. (*Id.* ¶¶ 69-71.) In her prescription, Dr. Braimbridge said that Telfa pads, which contain plastic, should not be used to treat the burns and advised Plaintiff that the plastic, which was previously prescribed by Jane Doe Medical Care Provider, would suffocate the wound. (*Id.* ¶ 72.) When Plaintiff returned to Fenwick House, she had difficulty sitting down for almost two months and was unable to work at her two jobs for that time, losing significant income. (*Id.* ¶ 73.) Plaintiff filed grievances and sent letters about her negligent medical treatment to the medical liaison at EMCF, Davis, the Ombudsman, and Hicks. (*Id.* ¶ 74.)

After she was released from Fenwick House in March 2020, Plaintiff saw her internist who referred her to a physician specializing in pain management, who told her that she had previously suffered third degree burns from the degreaser incident, and skin grafts would not help because there was damage to the muscle and nerves from the failure to properly treat her initial burn. (*Id.* ¶ 76.) Plaintiff sought a second opinion from another physician who agreed with the pain management specialist that Plaintiff had suffered third degree burns from the degreaser incident,

she had not been treated properly for the initial burns, and the delay in failing to properly treat the initial burns had caused further injury. (*Id.* ¶ 79.)

In Counts One, Two, Three, Four, and Five, brought pursuant to 42 U.S.C. § 1983, the Second Amended Complaint alleges Eighth Amendment cruel and unusual punishment claims regarding her pacemaker and chemical burns, against Defendants UCHC, Fenwick House, New Jersey Association on Correction, Arce, Rodriguez, Davis, Patterson, and Lewis. (*Id.* ¶¶ 82-119.) In Count Six, brought pursuant to New Jersey Tort Claims Act ("NJTCA"), the Second Amended Complaint alleges claims of medical malpractice regarding Plaintiff's chemical burns against Jane Doe Medical Care Provider and UCHC. (*Id.* ¶ 120-125.)

UCHC moves for dismissal of Plaintiff's Count Six medical malpractice claim against them. (ECF No. 77.) Davis moves for dismissal of Plaintiff's Counts One and Three Eighth Amendment cruel and unusual punishment claims against her. (ECF No. 78.) The motions are now fully briefed and ready for disposition.

## II.   <u>LEGAL STANDARD</u>

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the ... claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Stated differently, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

## III.   DISCUSSION

The motions to dismiss before the Court are brought by separate Defendants, UCHC and Davis, and move for the dismissal of separate claims. As such, the Court will address each motion separately.

### A. UCHC's Motion to Dismiss - Count Six-Claims Under New Jersey Torts Claims Act

In their motion to dismiss, UCHC makes two arguments for dismissal of Plaintiff's Count Six medical malpractice claim under the NJTCA. (ECF No. 77-3 at 5-15.) First, UCHC argues that Plaintiff's medical malpractice claims must be dismissed as time barred. (*Id.* at 5-9.) Second, UCHC argues that Count Six must be dismissed because Plaintiff failed to comply with New Jersey law for filing a tort claim against public employees pursuant to the NJTCA. (*Id.* at 9-15.) The

Court agrees with Defendant's second argument and dismisses Plaintiff's state tort claim of medical malpractice against Defendant UCHC.

Under New Jersey law, "[n]o action shall be brought against a public entity or public employee under [NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8–3. The NJTCA requires plaintiffs to file a notice of tort claim with the public entity being sued within 90 days of the incident and to wait for a response before filing a lawsuit. N.J.S.A. § 59:8–8(a). The notice requirement is "a jurisdictional precondition to filing suit," *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004) (internal quotation marks omitted), and suits that do not comply with the notice provision are "forever barred from recovering against a public entity or public employee." N.J.S.A. § 59:8–8. *See also Guzman v. City of Perth Amboy*, 518 A.2d 758, 760 (N.J. Super. Ct. App. Div. 1986) ("Timely statutory notice is a prerequisite."). However, a plaintiff may be permitted to file a late notice of tort claim by making a motion to the court that is "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file" a timely notice of tort claim within a year of the incident. N.J.S.A. § 59:8–9.

UCHC argues that Plaintiff never filed a notice of tort claim with UCHC. UCHC argues that "the alleged wrongful act or omission took place no later than July 15, 2019, that is, the date of the medical treatment and related events" regarding Plaintiff's chemical burns and alleged improper treatment by UCHC. (ECF No. 77-3 at 12.) Defendant argues Plaintiff's medical malpractice claim regarding her chemical burns should be dismissed because Plaintiff failed to file the notice of claim as to UCHC, within ninety-days of the accrual of her claim. (*Id.*) Additionally, Defendant argues Plaintiff was aware of UCHC, when she filed her Amended Complaint on

October 31, 2019, raising a claim regarding the chemical burn and improperly pled UCHC as Rutgers Behavioral Healthcare. (*Id.* at 11.)

Plaintiff responded arguing that she provided sufficient notice of claim to UCHC when Plaintiff filed a grievance regarding her chemical burns on October 11, 2019. (ECF No. 91 at 13.) Plaintiff argues that on October 11, 2019, she filed a resident statement of grievance at Fenwick House, in which she "included her name, the date of the incident, the staff involved ("DOC Medical at NSP"), and possible witnesses." (*Id.*) Plaintiff argues that because this grievance was filed within ninety-days of her initial treatment at NSP for her burn, on a New Jersey Association on Corrections form, she satisfied the notice requirement. (*Id.* at 13-14.) Additionally, Plaintiff argues that if the Court finds she did not provide sufficient notice of claim, she has "substantially complied" with the notice requirements. (*Id.* at 14.)

As explained above, Plaintiff filed an Amended Complaint on October 31, 2019, regarding her alleged improper medical treatment following her chemical burn. (ECF No. 7.) Plaintiff indicated that she experienced a medical burn on July 15, 2019 and was "medically neglected and [the] injury got wors[e]." (*Id.* at 1.) Plaintiff named "Rutgers Behavioral Healthcare" as a Defendant. (*Id.* at 4.) Plaintiff's Second Amended Complaint indicates that Defendant UCHC operated within Rutgers, the State University of New Jersey. (ECF No. 70 ¶ 7.) The definition of "public entity" under the NJTCA is "specifically intended to include such entities as . . . Rutgers the State University." Comment to N.J.S.A. 59:1–3; *U.S. v. Brow*, 2009 WL 4746344, at *4 (E.D.N.Y. 2009); *see Fine v. Rutgers, State Univ. of N.J.*, 163 N.J. 464, 468 (2000).

Here, because Plaintiff claims relief under state law, she must follow established state procedures. *See Murphy v. Bloom*, 443 F. App'x 668, 670 (3d Cir. 2011) ("The District Court [] properly recognized that Murphy did not follow the proper procedure for bringing a [state law] claim . . . as required by state law."). Plaintiff was required by New Jersey state law to file a notice

of claim with Defendant UCHC ninety-days after her July 15, 2019 injury and prior to her filing

of her first Amended Complaint. *See* N.J.S.A. § 59:8–3; *see Ptaszynski*, 371 N.J. Super. 333, 343.

Plaintiff argues first that she complied with the New Jersey state law's notice of claim

requirement, when she filed a resident statement of grievance at Fenwick House. (ECF No. 91 at

13-14.) Plaintiff attached a copy of her grievance at exhibit A of her brief in opposition to

Defendant UCHC's motion to dismiss.[4] (ECF No. 91-2.) The form is a New Jersey Association on

Correction grievance form and indicates that Plaintiff was denied medical care as NSP. (*Id.*) The

grievance does not name Rutgers or UCHC by name. (*See id.*) While Plaintiff argues the grievance

provided the information necessary for a notice of claim, Plaintiff points to no authority for the

proposition that a grievance qualifies as a notice of claim under NJTCA.

The purpose of the notice of claim requirement under the NJTCA is to provide the

defendants notice of a coming lawsuit. It allows the public entity time to review the claim and to

promptly investigate the facts and prepare a defense; provides them an opportunity to settle

meritorious claims before bringing suit; grants them an opportunity to correct the conditions that

gave rise to the claim; and allows them to inform the State in advance as to the expected liability.

*Velez v. City of Jersey City*, 180 N.J. 284, 850 A.2d 1238, 1242 (2004). An inmate who has filed

a medical grievance is not automatically going to file a subsequent lawsuit. *See Abdur-Raheem v.*

*New Jersey Department of Corrections*, No. 15-1743, 2017 WL 1050581, at *9 (D.N.J. 2017)

(finding filing a grievance does not automatically signal an impending lawsuit and, therefore,

---

[4] The Court is permitted to consider this grievance for motion to dismiss purposes because the document, written by Plaintiff, is being relied upon by Plaintiff in her argument that she did provide notice to Defendant. *See Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 372 (D.N.J., August 27, 2019) (A court may consider a document outside of the pleading that is an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

cannot serve as constructive notice that a lawsuit will be filed.)  Additionally, if a grievance form qualified as a notice of claim, public entity defendants would be compelled to prepare for a possible lawsuit every time an inmate files a prison grievance. *See Haymes v. Timmerman*, No. L–0910–13, 2015 WL 998676, at *2 (N.J. Sup. Ct. App. Div. Mar. 9, 2015) ("[W]e find no merit in appellant's contention that the inmate remedy form and his request for medical treatment were in themselves sufficient to give notice to the prison that he had a claim. Neither document provided the information that is required in a notice of tort claim[.]") Plaintiff's grievance form does not satisfy the notice requirements of NJTCA.

The Court notes additionally that Plaintiff's grievance was not addressed to Defendant UCHC, and as such did not include the information required in a notice of tort claim under N.J.S.A. § 59:8-4. The grievance was submitted to the New Jersey Association on Correction. Plaintiff's Second Amended Complaint indicates that New Jersey Association on Correction "is a private, not for profit corporation located at 986 South Broad Street, Trenton, New Jersey 08611, which operated Fenwick House." (ECF No. 70 ¶ 9.) The Second Amended Complaint further indicated that UCHC, operates within Rutgers, the State University of New Jersey and contracts with the New Jersey Department of Corrections. (*Id.* ¶ 7.) There is no indication in Plaintiff's Second Amended Complaint that a grievance filed with the private entity New Jersey Association on Correction, would satisfy the notice of claim requirement to the public entity UCHC.

Alternatively, Plaintiff argues that her grievance "substantially complied" with the filing of a notice of claim. (ECF No. 91 at 14-16.) Plaintiff again claims her grievance form should qualify as "substantial compliance" and appears to argue that her filing of the Amended Complaint on October 31, 2019, naming Rutgers Behavioral Healthcare as a defendant shows that she made effort to notify Defendant UCHC of her claim.

12

The equitable doctrine of substantial compliance prevents the barring of legitimate claims due to technical defects. *Lebron v. Sanchez*, 407 N.J.Super. 204, 970 A.2d 399, 406 (N.J.Super.Ct.App.Div.2009); *Henderson v. Herman*, 373 N.J.Super. 625, 862 A.2d 1217 (N.J.Super.Ct.App.Div.2004). The doctrine provides that technical notice defects will not defeat a valid claim as long as the notice that given "substantially satisfies the purposes for which notices of claims are required." *Lebron*, 970 A.2d at 405–06 (quoting *Lameiro v. W. N.Y. Bd. of Educ.*, 136 N.J.Super. 585, 347 A.2d 377, 379 (N.J.Super.Ct. Law Div.1975)); *see also Johnson v. Does*, 950 F.Supp. 632, 635 (D.N.J.1997). The doctrine of substantial compliance requires the moving party to show:

> 1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

*Ferreira v. Rancocas Orthopedic Assocs.*, 178 N.J. 144, 151, 836 A.2d 779 (2003).

As explained above, Plaintiff's grievance does not qualify as a notice of claim that simply suffered from technical notice defects. The grievance was not submitted to Defendant UCHC, nor is there anything in the Second Amended Complaint to indicate Defendant UCHC was aware of Plaintiff's grievance. Plaintiff's argument that the filing of her Amended Complaint should have served as notice and supports Plaintiff's argument that she was attempting to comply with the notice requirement is unconvincing. A complaint does not satisfy the notice requirements, as a plaintiff must provide the public entity defendant notice prior to the filing of a lawsuit. *Ptaszynski*, 853 A.2d at 294. Plaintiff has failed to show that the substantial compliance doctrine should be applied here.

Plaintiff has failed to establish, under Rule 8, that this Court has jurisdiction over Plaintiff's state law claims against them. Accordingly, Plaintiff's state law claims (Count Six) against

Defendant UCHC are dismissed for lack of jurisdiction. *See Bethea v. Roizman*, No. 11–254, 2012 WL 2500592, at *7 (D.N.J. June 27, 2012) (dismissing plaintiff's state law tort claims for his failure to plead compliance with the notice requirement under the Tort Claims Act).[5]

### B. Davis's Motion to Dismiss-Counts One and Three under the Eighth Amendment for Failure to State A Claim

Davis moves for dismissal of Counts One and Three of Plaintiff's Second Amended Complaint because Plaintiff fails to show that Davis was deliberately indifferent to Plaintiff's medical needs. (ECF No. 78-1 at 10-14.)

Regarding Plaintiff's pacemaker claim, Davis argues that Plaintiff fails to show Davis disregarded an excessive risk to Plaintiff by requiring her to have a doctor's note to obtain a pacemaker evaluation. (*Id.* at 10-13.) Davis claims that in telling Plaintiff to first seek guidance from a medical professional prior to engaging in health treatment for a pacemaker, Davis acted reasonably. (*Id.*)

Regarding Plaintiff's metal detector claim, Davis argues that Plaintiff fails to show Davis disregarded an excessive risk to Plaintiff by giving her a written exemption from having to go through the metal detectors and then following up with prison staff about Plaintiff's exemption. (*Id.* at 13-14.) Davis argues that she acted reasonably in providing Plaintiff with a written exemption from being required to pass through metal detectors and then following up with prison staff. (*Id.*)

Plaintiff argues that Davis's arguments fail to account for the additional facts alleged in the Second Amended Complaint. (ECF No. 90 at 16-22.) Regarding Plaintiff's pacemaker claim, Plaintiff replies that Davis fails to account for the fact that Plaintiff informed Davis in January

---

[5] The Court need not address Defendant UCHC's first argument for dismissal of Count Six as time barred due to the dismissal for failure to comply with the requirements of the NJTCA.

2018, that she was in immediate need of an evaluation, and despite this, Plaintiff did not receive an evaluation for an additional three months. (*Id.* at 17-18.) Additionally, Plaintiff argues that Davis did not act reasonably in May 2019, when she instructed Plaintiff that she needed a doctor's referral for an evaluation, because she had been aware since January 2018, that the pacemaker needed evaluation every three months. (*Id.* at 18-19.) Finally, Plaintiff replies that Davis' motion ignores entirely the Second Amended Complaint allegations that Davis is liable as the Administrator of EMCF for the policy/practices that denied Plaintiff the ability to obtain the needed testing. (*Id.* at 19-20.)

Regarding Plaintiff's metal detector claim, Plaintiff argues that Davis ignores operative facts from the Second Amended Complaint when arguing that she acted reasonably in May 2019, when she provided Plaintiff with an exemption. (*Id.* at 20-22.) Plaintiff notes that in January 2018, she told the guards that she could not pass through the metal detectors and when they ignored Plaintiff's requests, Plaintiff and her sister complained to Davis. (*Id.*) Plaintiff claims that despite notifying Davis, Plaintiff was still required to pass through the metal detectors until her May 2019 meeting with Davis. (*Id.*) Finally, Plaintiff again argues that Davis's motion ignores entirely the Second Amended Complaint allegations that Davis is liable as the Administrator of ECMF for the policies/practices that required Plaintiff to go through the metal detectors. (*Id.* at 22.)

The Eighth Amendment prohibits the states from inflicting "cruel and unusual punishment" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344–46 (1981). This proscription against cruel and unusual punishment requires prison officials to provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*,

318 F.3d 575, 582 (3d Cir. 2003). Therefore, in order to set forth a cognizable claim for a violation of her right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 106.

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d 192, 197 (3d Cir. 1999).

Personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010). Hence, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which

16

directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

### 1. Pacemaker

Here, Davis makes no argument regarding Plaintiff's supervisory liability claim against her. Rather, Davis argues only that Counts One should be dismissed as it pertains to her because her action of requiring Plaintiff to have a medical referral for a pacemaker evaluation was reasonable. However, the Second Amended Complaint alleges broader more long-term facts regarding Plaintiff's Eighth Amendment claims against Davis.

Generally, "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d at 236. Here, the Second Amended Complaint indicates that at Plaintiff's initial medical screening in January 2018, she informed Davis that her pacemaker must be evaluated every three months, and that it had been three months since the last evaluation. (ECF No. 70 ¶ 24.) Plaintiff did not receive an evaluation until April 2017, six months after her last evaluation. (*Id.* ¶ 25.) In July 2018, Dr. Meo informed Plaintiff that he was not equipped to check her pacemaker, and either Medronic had to come to NSP or Fenwick House to do the evaluation, or Plaintiff had to be sent to a medical provider with equipment to evaluate her pacemaker. (*Id.* ¶ 30.) In May 2019, a year after Plaintiff's pacemaker had last been evaluated, Plaintiff met with Davis and requested to have her pacemaker evaluated by a doctor "when she goes home on weekends." (*Id.* ¶¶ 35-36.) Davis denied Plaintiff's request, stating that Dr. Meo must order that Plaintiff's

pacemaker be evaluated. (*Id.* ¶ 37.) At that point, Davis had actual knowledge that medical staff had not provided Plaintiff with the necessary testing for over a year.

Plaintiff claims Davis is liable as a supervisor for creating or applying policies, practices and/or customs that deny an inmate the ability to obtain basic tests to reevaluate the operation of pacemakers in a timely manner, and/or failing to train their subordinates to provide an inmate with basic diagnostic tests for pacemakers in a timely manner. Plaintiff alleges facts that there was a practice that the facility doctor was unable to provide the necessary pacemaker evaluation and medical staff failed to obtain the outside testing for Plaintiff. Plaintiff alleges that Davis was aware of this failure to provide Plaintiff with testing. At this early stage, Plaintiff has sufficiently allegedly that Davis had actual knowledge of and acquiesced in the violations of Plaintiff's Eighth Amendment rights by medical staff. *See Baker*, 50 F.3d at 1190–91; *see also Carter v. Smith*, 2009 WL 3088428, at *5 (E.D. Pa. Sept. 22, 2009) (denying motion to dismiss where inmate-plaintiff alleged that prison officials had actual knowledge of inadequacy of care). As such, Davis's Motion to Dismiss Count One against her is denied.

### 2. *Metal Detectors*

Here, regarding Plaintiff's Claim Three metal detector claim, Davis again fails to address Plaintiff's supervisory liability claim against her. Davis argues only that she acted reasonably in providing Plaintiff was an exemption note in May 2019. While Davis argues that the Second Amended Complaint indicates that she followed up with the prison staff about the exemption, Plaintiff submits only that Davis stated that she "would address the staff about this" not that she did in fact address the staff. (*See* ECF No. 70 ¶ 54.)

Plaintiff submits that upon her arrival at EMCF in January 2018, she informed the prison guards that the metal detectors could cause her pacemaker to malfunction, and the guards informed her that she was required to go through them due to a Department of Correction policy. (*Id.* ¶¶ 47-

18

48.) Plaintiff complained to Davis regarding Plaintiff being forced to go through the metal detectors. (*Id.* ¶ 50.) However, Plaintiff was required to go through the metal detectors for an additional six weeks. (*Id.* ¶ 51.) Plaintiff estimates that she was required to pass through the metal detectors approximately three to four times a day for those six weeks. (*Id.*) Plaintiff complained to Davis in May 2019, at which point Davis agreed to an exemption letter. (*Id.* ¶ 54.) Although Davis argues the reasonableness of providing Plaintiff with an exemption letter in May 2019, that argument fails to address the six weeks prior in which Plaintiff was required to pass through the metal detectors.

Plaintiff claims Davis is liable as a supervisor for creating or applying policies, practices, and/or customs that require inmates to pass through metal detectors even if they have pacemakers, and/or failing to train their subordinates to allow inmates to avoid metal detectors in they have pacemakers. (*Id.* ¶ 100.) A supervisor may also be liable for an Eighth Amendment violation if the plaintiff "identif[ies] a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure." *Barkes v. First Corr. Medical Inc.*, 766 F.3d 307, 330 (3d Cir. 2014) reversed on other grounds by *Taylor v. Barkes*, 132 S.Ct. 2042 (2015). Plaintiff alleges facts that she was informed that there is a policy requiring her to pass through the detectors. Plaintiff also submits that she informed Davis that Plaintiff needed an exemption to the policy, and that request went unanswered for six weeks. Plaintiff submits that for the six weeks she was "in fear of her pacemaker malfunctioning and placing her in immediate harm." (*Id.* ¶ 57.) Again, at this early stage of litigation, Plaintiff has provided facts that there was a policy regarding the metal detectors and that Davis was aware of

Plaintiff's medical need for an exemption to that policy and failed to act for six weeks. As such, Davis's motion to dismiss Count Three against her is denied.

### C. Davis's Motion to Dismiss-Counts One and Three Based on Qualified Immunity

Davis's final argument is that Counts One and Three should be dismissed against her under the doctrine of qualified immunity. (ECF No. 78-1 at 15-18.) Davis argues that she did not violate clearly established law by advising Plaintiff that a doctor's order was needed to obtain a pacemaker evaluation. (*Id.* at 15-17.) The motion to dismiss further asserts that Davis did not violate any clearly established right by reasonably giving Plaintiff a written exemption from having to pass through the metal detectors. (*Id.* at 17-18.)

In response, Plaintiff argues that she has sufficiently pled that Davis violated her Eighth Amendment right, which was well-established at the time of violation. (ECF No. 90 at 23-24.)

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step inquiry into whether qualified immunity applies: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), abrogated in part by *Pearson v. Callahan*, 555 U.S. 223 (2009).

For the reasons discussed above, Plaintiff has adequately stated an Eighth Amendment claim against Davis in Count One and Count Three of the Second Amended Complaint. As such, Plaintiff has adequately pled that Davis's conduct violated Plaintiff's constitutional rights. Therefore, to be entitled to qualified immunity, Davis must show that Plaintiff's constitutional right was not "clearly established" at the time of the violation.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Kane v. Barger*, 902 F.3d 185, 194 (3d Cir. 2018) (citations omitted). In order to determine if the "right at issue" was "clearly established" at the time of the alleged misconduct, the right at issue must be defined "at the appropriate level of specificity." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012). However, "it need not be the case that the exact conduct has previously been held unlawful so long as the contours of the right are sufficiently clear." *Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The issue is whether Plaintiff had a clearly established right to adequate medical care regarding her pacemaker. Davis argues only that she did not violate clearly established law by advising Plaintiff that a doctor's order was needed to obtain a pacemaker evaluation and by giving Plaintiff a written exemption from having to pass through the metal detectors. (*Id.* at 17-18.) As explained above, Davis fails to discuss the totality of the facts raised against her in the Second Amended Complaint. Davis presents the Court with the two facts raised by Plaintiff that would appear to support Davis's position and chooses to ignore the rest of the facts regarding the allegations against her. Davis fails to provide the Court with any case law to support her position that Plaintiff's right to adequate medical care regarding her pacemaker was not clearly established.

As explained by the Court previously, prison officials are required to provide inmates with adequate medical care. *Estelle,* 429 U.S. 97, 103–04. Davis has failed to prove that Plaintiff's right to adequate medical care regarding her pacemaker was not clearly established. *Gomez v. Toledo*, 446 U.S. 635, 639 (1980) (noting qualified immunity is an affirmative defense, and the burden of pleading it rests with the defendant.) As such, Davis's motion to dismiss based on qualified immunity is denied.

IV.   **CONCLUSION**

Based on the foregoing, Defendant Rutgers University Correctional Health Care's motion to dismiss (ECF No. 77), is **GRANTED** and Count Six (New Jersey Tort Claims Act claim for medical malpractice) of Plaintiff's Second Amended Complaint against Defendant Rutgers University Correctional Health Care is **DISMISSED**. Defendant Sarah Davis's motion to dismiss (ECF No. 78) is **DENIED**.

An appropriate Order accompanies this Opinion.


**Dated: September 13, 2022**

**JULIEN XAVIER NEALS**
**United States District Judge**